USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/4/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
x------------------------------------------------x

RAMON MODESTO,
                Plaintiff,

  -against-

HECTOR FIGUEROA, et.al.
                Defendants,
x------------------------------------------------x

15-cv-495 (KNF)(RA)
**OBJECTIONS** TO
REPORT AND RECOMMENDATION
(SEIU 32BJ Defendants)

THE HONORABLE RONNIE ABRAMS, UNITED STATES DISTRICT JUDGE

THE HONORABLE KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

### OBJECTIONS TO THE REPORT AND RECOMMENDATION
(SEIU 32BJ Defendants [UNION])

Plaintiff files his Objections to the Report and Recommendations of the Hon. Kevin Nathaniel Fox, Magistrate Judge on November 2, 2015. Plaintiff also has attached to this Objection an affidavit containing factual information as per Local Civil Rule 7.1 of the court. Plaintiff incorporates as part of his objection the opposition to motion to dismiss filed by Securitas defendants. Thus, the affidavit and the opposition referred to and this objection timely filed should be taken as true for the purposes of deciding the motion to dismiss filed by FQM defendants. This is in accord with applicable case law as will be discussed herein.

### DISCUSSION

On a motion to dismiss, a plaintiff need not plead all the facts necessary to establish a prima facie case, but must satisfy the provisions of Fed. R. Civ.Proc. The court

1

must "accept as true the facts alleged in the complaint and any submissions in opposition to the dismissal motion. " (511 West 232nd Owners Corp. v. Jennifer Realty Co. 98 NY 2d 144,152 [2002]). " The court is required to accept the material facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 679 129 S. Ct. 1937, 1949-50 173 L. Ed. 2d 868 (2009)." The court may refer to "documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in (a) plaintiff's possession or of which (b) plaintiff had knowledge and relied on in bringing the suit." ( Brass v. Am. Film Tech., Inc. 987 F. 2d 142, 150 (2d Cir. 1993).

In addition, " a plaintiff may submit affidavits to remedy defects in the complaint and preserve ill- pleaded, but potentially meritorious claims " (Mills v. Gardner 106 AD 3 d 885,886 [2nd Dept 2013 ] quoting Cron v. Hagro Fabrics ,Inc 91 NY 2d 362, 366 [366] [1998]". " A court may freely consider affidavits submitted by the plaintiffs to remedy defects in the complaint ". (Well v. Yeshiva Rambam 300 AD 2d 580 [ 2d Dept. 2002].

Plaintiff had repeatedly raised his concern and complained to defendant union the harassment, discrimination and retaliation done to him by both Securitas and FQM defendants. This aggravation stretched all the way from plaintiff's post at 200 Hudson loading dock to 350 Hudson. Plaintiff as early as July, 2013, had already complained to the defendants about his shaved hours, denial of overtime, deprivation of promotion and serious complaints against FQM. But defendants from the union lied to plaintiff several times. Melendez promised to talk to Griffin to get plaintiff's hours back but he never did. Herrera told plaintiff that plaintiff was only on mandatory 90 day suspension, but he was without work for 135 days. Herrera also said that he will talk to union representative non-defendant Corrado Mielo about Dzaferovic harassment but nothing happened. Herrera promised to get plaintiffs

2

hours back through arbitration, and so did defendant Dan Wilson in his letters, but raised false promises because they cancelled arbitration and plaintiff was never restored to his post nor recover his lost hours. Clearly the union defendants sided with Securitas and prevented plaintiff from working soon enough. The union on several instances helped people who were not Asians or Filipino like plaintiff get back to work even if they committed serious offenses against Securitas and FQM. Please see attached affidavit against FQM. Despite plaintiff paying union dues even during the period of his unlawful suspension, the union defendants allowed Securitas to retaliate against plaintiff. Defendants have seriously violated their duty of fair representation and breached their contract to fully protect their paying members like plaintiff as embodied in the CBA. That Dzaferovic was allowed to file a false report on the April 5, 2014 incident and worse, that the union, through the defendants together with FQM supervisors and superiors took Dzaferovic back to work after he was fired for harassing another person at 350 Hudson is a clear testimonial to their aiding and abetting violations of law. What made the workplace a hostile work environment, among others was the fact that the union and FQM defendants acted together to make plaintiff lose his Fire Safety Director license FSD (FSD Z 50) by preventing him from taking the FSD test, which promotion will almost double plaintiff's salary as the rest of his co-workers who all have passed the FSD test with the support of Securitas. Plaintiff lost a great career opportunity because of the union defendants who never helped him. A giant organization like the union makes defendant Hector Figueroa liable as President for his lack of concern for members whom he failed to protect by laying out clear policies against discrimination and retaliation. His failure to address violations of federal, state and city laws on discrimination and retaliation dwarf his supposed "accomplishments" in protecting the rights of workers. Clearly the union defendants 'aid and abetted" discrimination

3

and retaliation done to plaintiff by their clearly coddling the oppressors and their failure to investigate repeated complaints.

While there is no claim for individual liability under Title VII, " defendants may be held individually liable under the NYSHRL." Ramirez v. Hempstead Union Free School Dist. Bd. Of Educ. 2014 WL 3547374,* 6 (E.D.N.Y. 2014) citing Feingold v. New York, 366 F3d 138,157 (2d Cir. 2004) and Tomka v. Seiler Corp. 66 F3d 1295,1317 (2d Cir. 1995). According to the Second Circuit if Feingold, a supervisor is an "employer" and liable under the NYSHRL if that supervisor " actually participates in the conduct giving rise to the discrimination." Feingold citing Tomka. In addition a non-supervisor, or a co-worker, may be liable for discrimination even if they lack the authority to hire for or fire plaintiff if that person "aid[s], abet[s],incite[s],compel[s] or coerces[s] the doing of any acts forbidden under this article or attempt to do so. Id., at 158 (citing N.Y. Exec. Law s. 296 (6)). This language has been interpreted to extend liability to any individual defendant who " actually participates in the conduct giving rise to the discrimination claim." Id.

Other courts have found that a failure to investigate can constitute "active participation" to support an "aiding and abetting " claim. (see Feingold). The court denied summary judgment on s. 296 claims where defendants took no action to remedy such behavior of which they were aware ) Gallo v. Wonderly Co., Inc. 2014 WL 36628 * 8(N.D.N.Y. 2014) ( a person May be liable under s. 296 for taking no action to remedy discriminatory behavior ); Lewis v. Triborough Bridge and Tunnel Auhto. 77 F. Supp. 2d 376,384 (S.D.N.Y.1999) ( " the case law establishes beyond cavil that a supervisor's failure to take adequate remedial measures can rise to the level of "actual participation" under HRL s. 296 (6) )accord Cid v. ASA Institute of Business & Computer Technology ,Inc. 2013 WL 1193056 * 6 (E.D.N.Y. 2013 ) Note that defendant Dunn was the Director of Labor Relations for Securitas, and he asked plaintiff to " email him and get back to him (Dunn) if plaintiff had more

4

concerns, so that he "could address them". Dunn was therefore, a supervisor and a person in authority who had completely ignored plaintiff and his legitimate and work-related concerns.

WHEREFORE, plaintiff prays that the Report and Recommendation granting the union defendants motion to dismiss be reversed and set aside and the motion to dismiss filed by the union defendants be denied.

Dated:  December 2, 2015
       Woodside, NY 11377

*Ramon Modesto*
Ramon Modesto
4029 67 St., 2F
Woodside, NY 11377
Cel. 718-431-5226

5

# A F F I D A V I T

I, Ramon Modesto, under penalty of perjury alleges that:

1. I am employed as a security officer of Securitas Security Services.
2. I became a permanent employee and a member of SEIU 32 BJ Union sometime on March, 2013. I have religiously paid union dues in an amount reflected in the attached schedule which is $ 50.00/month. Please see attached schedule of union dues.
3. Sometime in July, 2013, my employer Securitas began to shave my hours and began giving it to defendant Brenda Johnson ('Johnson") who worked in the same building where plaintiff was at 200 Hudson St.. My regular working hours after 6 pm or when there was overtime was given to other younger, male and female security officers. Johnson was also given more hours on a weekend, and her hours were sometimes 50-60 hours per week while my working hours were cut down to only about 30 average. She also enjoyed more breaks.
4. I first complained to Securitas defendant Frank Anello ( "Anello") , then to non-defendant Debbie Fernandez who could not tell me what was wrong and what was going on. Anello was the superior announcing the systematic cutting of my hours without any reason.
5. I was forced to find another job at another security agency Allied Barton Security Services in order to support myself and my family.
6. On August, 2013, I complained to Union delegate Israel Melendez ("Melendez"), formerly employed by Securitas and a co-worker of FQM defendant Jusuf Dzaferovic (" Dzaferovic") and Johnson At 350 Hudson building. He said that what Securitas was

1

doing to me at 200 Hudson "was wrong".

He promised to talk to Securitas officers but my complaint was disregarded because I never got my hours back.

7. On October, 2013 I was harassed by Dzaferovic who hurled racial epithets against me. I am Filipino and I believe I am the only Filipino in the site at Trinity Real Estate (Trinity).

8. I went to the Union office several times to file grievance complaints. I sought help from Union steward Henry Fair, Union Delegate Melendez and Johnny Herrera ("Herrera") of 32 BJ. But they did nothing to help me.

9. At one time, I was at the office of Melendez at 32 BJ. I told him about my problems with Securitas and that some FQM employees were harassing me and clipped my locker at 200 Hudson.

10. I asked Melendez if Securitas and FQM were conspiring against me and Melendez said- " Of course they're conspiring against you. We (in the Union) trained them to move against certain people they don't want."

11. When I finally talked to Mr. Herrera I asked him why after all my messages and calls, it took a long time for him to reply. He said – " I was busy. We can't be attending to your problem only. We have thousands of members."

12. When I was harassed and racially slurred again on April 5, 2014 by Dzaferovic, I bring this grievance once more to the union. Non-defendants Mr. Leo and Mr. Montero union advisers tell me that I cannot complain against a "brother union member like Dzaferovic" even if he has harassed and discriminated against me numerous times. Unable to bear the hostility shown to me by Securitas and FQM defendants, I request for a transfer to another site on April 7, 2013, and reporting Dzaferovic to the hotline of Securitas at the same time. Please see opposition filed by plaintiff on September 23, 2015.

2

13. Melendez and Herrera tell me the same excuse. Herrera even promised me that he would act on my request that I talk to non-defendant Corrado Mielo of 32 BJ, the union representative for FQM (Securitas and FQM are both Members of SEIU 32 BJ) and report the misconduct of Dzaferovic. But this meeting never took place since I believe Herrera never set it up.

14. Defendant Dan Wilson ("Wilson") union grievance representative, together with Herrera, gave me false hopes that my grievance would be subject to arbitration. This was utterly false and arbitration never occurred. Instead the defendants terminated and closed my complaint.

15. Meanwhile, non-defendants Mr. Leo and Montero assured me several times that my case for arbitration was still open. But Herrera likewise told me that my case was closed and terminated. That it was over and done. That I was never going back to the site " because the client doesn't like you", and the client (and Securitas) gave the order to get me off the site. Employees of 32 BJ gave me conflicting reports and was clearly misleading, deceiving and giving me the run-around. Herrera lied to me when he said I was on mandatory 90 day suspension when in fact I was without work for 135 days.

16. A female employee non-defendant Erin, also a security officer at 14th St. Union Square, confided to me over the phone that 32 BJ employee non-defendant Leshawn Henry and a certain non-defendant Mr. Kyle of the Union Grievance Appeals Board, had both stated that my arbitration was closed since I was "not terminated" and only "suspended".

17. I believe that the Union defendants violated their duty of fair representation, and breached the Collective Bargainig Agreement (CBA) Where the Union was duty bound to protect it's members. Attached is a Copy of the CBA.

3

18. I believe Mr. Hector Figueroa (" Figueroa") in his capacity as President, 32 BJ should be held liable for failure to discard obsolete policies on lack of protection of union members who are victims of retaliation. It is to be noted that plaintiff has paid dues even during the period of his unlawful suspension.

19. The union defendants should be also held liable for "aiding and abetting" the retaliation done to plaintiff. Please see discussion on Objections to Report and Recommendation dated December 2, 2015 filed by plaintiff attached to this affidavit.

20. As clearly admitted by Melendez, Securitas and FQM conspired to move against plaintiff and get plaintiff to quit his job.

21. Plaintiff believes that 32 BJ defendants veiled their lack of intent to assist plaintiff and with malice aforethought, deceitfully made plaintiff run in around in circles and denied him any form of assistance. Defendants discriminated and retaliated against plaintiff since in the case of other members of the union, defendants immediately assisted them even when they were fired for misconduct or other grave offense, notably in the case of:

    21.1 Jusuf Dzaferovic- fired for hatassment on June, 2013. The union helped him get his job back at 350 Hudson. He is Albanian.

    21.2 Jose Palma- a Securitas security officer fired for misconduct at the UBS site at 1285 Broadway. He was immediately given a new post as security in a nursing home in New York. Non-defendant Mr. Palma is from the Dominican Republic.

    21.3 Anna Suarez- A securitas employee fired for violation of Securitas rules on disciplne. She too, was assisted by the union to occupy a new post. Officer Suarez is Afro-American.

4

21.4   Other similar cases involving Securitas guards and/or FQM employees and workers.

22.   Plaintiff believes that he may have targeted by the union for retaliation when he complained that his hours were being shaved and given to Johnson.

23.   Plaintiff incorporates as part of his affidavit the Affirmation of Plaintiff in Opposition to Defendants Securitas, Union 32 BJ and FQM Motions to Dismiss together with all attachments and annexes in said Affirmation submitted to the court on September 23, 2015.

Plaintiff respectfully submits this affidavit as part of his objections to the Report and Recommendation submitted by Hon. Judge Kevin Nathaniel Fox On November 2, 2015.

*Ramon Modesto*
Ramon Modesto

Woodside, New York
December 2, 2015
Subscribed and sworn to before me this ___2___ day of December, 2015.

NOTARY PUBLIC

ANDREW CASINO
Notary Public, State of New York
No. 02CA6073875
Qualified in Queens County
Commission Expires April 9, 2018

5

212-388-3532
I.9N

# LOCAL 32BJ DUES RATES
## Dues and Initiation Fee Rates
### Effective October 1, 2008

**Full Time***

| HOURLY PAY RATE | MONTHLY DUES |
|---|---|
| $9.00 and below | $40.00 |
| $9.01-14.00 | $45.00 |
| $14.01-15.00 | $50.00 |
| $15.01-16.00 | $55.00 |
| $16.01-19.00 | $60.00 |
| $19.01-21.00 | $65.00 |
| January 1, 2009  $21.01 and above | $70.00 |
| January 1, 2010  $23.01 and above | $75.00 |

**Part Time***

| HOURLY PAY RATE | MONTHLY DUES |
|---|---|
| $11.00 and below | $29.00 |
| $11.01 and above | $33.00 |

**INITIATION FEE TABLE**

| MEMBER TYPE | FEE AMOUNT |
|---|---|
| Full-Time (≥$400/wk gross) | $150.00 |
| Full-Time (<$400/wk gross) | $100.00 |
| Part-Time | $60.00 |

***Am I full-time or part-time?***

Members are considered full-time if they regularly work 35 or more hours a week, or work more than two days a week and receive comprehensive, employer-provided health benefits under the industry-wide standard agreement for their work classification or geographic region.



212-388-3800
212-388-3500