UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

x-------------------------------------------------x

RAMON MODESTO

             Plaintiff,

   -against-


HECTOR FIGUEROA, et.al.

           Defendants,

x-------------------------------------------------x

15-cv-0495 (KNF)(RA)

MEMORANDUM

FOR  OPPOSITION TO

MOTION TO DISMISS

RECEIVED
SDNY PRO SE OFFICE
2015 DEC 17  AM 9: 14

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:   12/17/15

# M E M O R A N D U M

I, Ramon Modesto, under penalty of perjury, hereby alleges that:

Plaintiff files this **memorandum ,** consisting of ten (11) pages, in to opposition  to motion to dismiss filed by defendants Christian Gonzales and Peter St. John of  Trinity Real  Estate. Attached to this memorandum is **an affidavit** executed  by plaintiff supporting factual allegations. Plaintiff  incorporates by reference his complaint and the succeeding pleadings filed in this case including his oppositions to the motion to dismiss filed by defendants Securitas, First Quality Maintenance (FQM) and SEIU Union 32BJ and affirmations and  affidavits together with annexes and attachments.

# D I S C U S S I O N

In deciding a motion to dismiss, the court is required to accept the material facts alleged in the complaint as true and draw all reasonable inferences in favor of

1

plaintiff. Ashcroft vs. Iqbal, 556 U.S. 662,679.166, 129 S. Ct. 1937, 1949-50 173 L.Ed. 2d 868 (2009)." When there are well-pleaded factual allegations, a court should assume their veracity and determine whether they plausibly give rise to an entitlement of relief." Iqbal, 556 U.S. at 679, 129 S. Ct. 1937. In its Rule 12(b)(6) analysis, the Court may refer " to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in (a) plaintiff's possession or of which (b) plaintiff had knowledge and relied on in bringing the suit." Brass v. Am. Film Tech., Inc. 987 F 2.d 142, 150 (2d Cir. 1993).

On a motion to dismiss, a plaintiff need not plead all the facts necessary to establish a prima facie case, but must satisfy the provisions of Fed. R. Civ. P. The court must " accept as true the facts alleged in the complaint and any submissions in opposition to the dismissal motion" (511 West 232nd Owners Corp. v. Jennifer Realty Co., 98 NY2d 144, 152 [2002]).

In addition, " a plaintiff may submit affidavits to remedy defects in the complaint and preserve inartfully pleaded, but potentially meritorious claims " (Mills. V. Gardner 106 AD 3d 885,886, [2nd Dept 2013] quoting Cron v. Hagro Fabrics Inc. 91 NY2d 362,366 [1998]. " A court may freely consider affidavits submitted by the plaintiffs to remedy defects in the complaint." (Well v.Yeshiva Rambam, 300 AD2d 580 [2d Dept.2002 ].

In October 10, 2013, First Quality Maintenance (FQM) defendants Deetendra Harisaran ("Harisaran") Mark Kelly ("Kelly") and ̅Keith Cummings ("Cummings") abruptly and without reason or previous notice to plaintiff clipped plaintiff's locker at 200 Hudson. (see attached pictures at plaintiff's affirmation attached to the opposition to motion to dismiss filed by FQM defendants). Plaintiff

was at that time on duty. Harisaran, Kelly and Cummings  spread  plaintiff's personal belongings on the locker room floor and bench. Plaintiff asked them why they did this but they refused to answer. Defendant Kelly later admitted to plaintiff that " this is  the fault of Gonzales and Dave (Harisaran)". When plaintiff complained to Securitas, Securitas defendant Frank Anello ("Anello") admitted  to plaintiff  on that same day October 10, 2013,  in his words that - "CHRISTIAN GONZALES   ORDERED THE CLIPPING OF YOUR LOCKER AT 200 HUDSON. HE (GONZALES) SAID THAT YOU DON'T DESERVE A LOCKER. HE EMAILED ME AND SAID THAT YOUR LOCKER WILL BE CLIPPED TODAY. GONZALES SAID THAT YOUR LOCKER WILL BE GIVEN TO SOMEBODY ELSE. I THINK YOU'RE NOW REDUCED TO A PART-TIME EMPLOYEE ".   Plaintiff repeatedly asks  Mr. Anello for a copy of that email by Mr. Gonzales but Mr. Anello never gave it to plaintiff,  although Anello  admitted to the existence of said email dated October 10, 2013. In the meeting of November 4, 2013, defendant James Griffin ("Griffin")  also repeated that plaintiff  is not entitled to use a locker since he is  reduced to a part-time employee.

Plaintiff's  locker was given to a younger, black male employee. Defendant Anello, perhaps out of guilt, then gave plaintiff  another locker at 75 Varick St. bldg, one of the thirteen (13) buildings  owned by Trinity at Hudson Square in Manhattan. But plaintiff never used it for obvious reasons. Plaintiff  likewise complained to FQM defendant Tony Waterman ("Waterman"), an  FQM supervisor.  In his office Waterman  calls  Kelly and utters profanity shouting- "SECURITY GUARD MODESTO IS HERE FROM 200 HUDSON. HE'S COMPLAINING ABOUT HIS LOCKER. WHY THE F****K  DID YOU CLIP HIS F ****NG LOCKER ?  YOU AND DAVE  (HARISARAN) KNOW THAT

3

THAT'S F****NG WRONG. YOU FIND HIM ANOTHER F****NG LOCKER IN ANOTHER BLDG. IMMEDIATELY !."  After a few minutes Waterman informs plaintiff- " MARK (DEFENDANT KELLY) TELLS ME THAT CHRISTIAN GONZALES THE PROPERTY MANAGER ORDERED THEM TO CUT YOUR LOCKER. DON'T GO AGAINST THIS GUY GONZALES. YOU DON'T WANT TO MESS AROUND WITH THIS M****F***ER CHRISTIAN GONZALES." Plaintiff believes that Waterman was aware that Gonzales is also a defendant in the case of Valcarcel v. First Quality Maintenance (FQM) involving plaintiff Prince Valcarcel, an FQM employee also at 200 Hudson, who alleges to have been discriminated and retaliated against by Mr. Gonzales and Peter St. John.

Waterman clearly admits indirectly, that his boss Gonzales and his men committed an actionable wrong against plaintiff . Waterman appears to be aware of Gonzales' acts of retaliating against people he does not like or intends to harass and make work conditions difficult for. This  Mr. Gonzales believes he can do since he represents the powerful client Trinity to whose behest contractors like Securitas and FQM and even the union is beholden to.

Anello and Waterman then assists plaintiff to find a locker at 75 Varick. Anello and Waterman discuss what happened to plaintiff's locker at 200 Hudson building. It was clear that their haste and  pretense of ready assistance to plaintiff was to cover the misdeed of defendant Gonzales who represented Trinity, the powerful client of  Securitas and FQM.  Plaintiff believes that  Anello and Waterman wanted to cushion  the impact of the serious mistake  done to plaintiff by Gonzales and by those whom Gonzales directed to cut  plaintiff's locker. Plaintiff believes that it was Gonzales or Securitas or both of them acting together, who made the decision to clip plaintiff's locker, and force out plaintiff's personal belongings, including his books and notes for the FDNY FSD test, and leave them

4

in disarray at the locker room floor and bench where plaintiff found them. Plaintiff was informed about this clipping of his locker by Securitas co-worker Manuel Munoz (not a defendant). Mr. Munoz is now the FSD of 200 Hudson.

It appeared that Securitas defendant Brenda Johnson ("Johnson") and other black, Hispanic and white employees male and female were being favored by Gonzales for choice positions and better terms and conditions of employment since the day plaintiff reported for work at Trinity. Defendant Gonzales is Hispanic. Plaintiff believes that his complaint against Johnson re the "bike incident" may have irked Gonzales who came to the rescue of his favorite employee, defendant Johnson. Plaintiff believes that Gonzales retaliated against him. Plaintiff also believes that his hours were drastically and systematically chopped when Gonzales became aware that plaintiff spoke with and sided with FQM non-defendant Engineer Melvin Munoz of 75 Varick St. building, who, together with FQM employee Prince Valcarcel both sued Gonzales and St. John for retaliation and discrimination. Gonzales is believed to be well aware of these facts since he is the property manager of three (3) buildings including 200 Hudson and 75 Varick. Plaintiff now brings this case against Gonzales and St. John for violations of discrimination and retaliation laws. Also important to note, plaintiff believes, is the admission of SEIU 32 BJ defendant Israel Melendez ("Melendez") who confessed to plaintiff that indeed, plaintiff was the victim of a "conspiracy between Securitas and FQM", and now Trinity, who were all working together to get plaintiff off the site and quit his job. Incidentally, the relationship of Melendez, a former employee of Securitas, Johnson and Dzaferovic go a long way back since they worked together in their building at 350 Hudson St.

For his part, defendant Mr. St. John knew and should have known that plaintiff was racially slurred and harassed by FQM defendant Jusuf Dazaferovic

5

("Dzaferovic") several times on October 16, 23 and 30, 2013 and April 5, 2014 at 350 Hudson building. This last racial slurring forced plaintiff to ask for a transfer to another site due to a hostile work environment. St. John was the the EVP for property management at Trinity and all the property managers, including defendant Gonzales reported to him.

Dzaferovic was fired from FQM when he allegedly harassed and committed serious offenses against an individual at 350 Hudson St. When he was terminated, a notice was posted in all thirteen (13) buildings of Trinity warning security not to allow him entry into the Trinity property portfolio. See attached notice dated June 6, 2014 in plaintiff's opposition to motion to dismiss. Union 32 BJ however, immediately assisted Dzaferovic to return to his old post after he was fired. Defendant Herrera of the union admitted likewise that defendant St. John accepted Dzaferovic back to work. Both St. John and Dzaferovic are white.

When he was suspended for more than four (4) months, plaintiff asked for assistance several times from the Union. On one occasion, defendant Johnny Herrera of 32 BJ Union admitted to plaintiff that – "THE UNION HELPED JOE GET HIS JOB BACK . THEY WANTED TO HELP HIM, NOT YOU".  At the same time, he also admitted that- "THE CLIENT (represented by defendant St. John) ORDERED YOU OFF THE SITE AND SECURITAS SUSPENDED YOU FROM WORK. YOU ARE NOT GOING BACK THERE- EVER. YOU'RE OFF THE SITE. YOU'RE DONE. YOURE FINISHED". Plaintiff also asks Herrera about the union arbitration in his behalf to get his hours back. Herrera said – "THE UNION ALSO CLOSED AND TERMINATED YOUR ARBITRATION ( without a single arbitration meeting.) . THEY CLOSED IT. THERES NOTHING YOU CAN DO. YOU'RE FINISHED. YOU'RE DONE. THAT'S IT. IM WARNING YOU- " DO NOT EVER TELL ANYBODY OR IF YOURE TRANSFERRED

6

TO ANOTHER SITE, DON'T TELL ANYONE ABOUT THE THINGS THAT HAPPENED BETWEEN YOU, SECURITAS OR THE UNION."

On another occasion, a union part-time female employee named Erin, a security officer at 14th St., Union Square, told plaintiff when he asked about the arbitration with Securitas- " THEY (THE GRIEVANCE AND ARBITRATION COMMITTEES) SAID YOU DON'T DESERVE AN ARBITRATION HEARING. THE ARBITRATION HEARING IS ONLY FOR TERMINATED EMPLOYEES. YOU WERE ONLY SUSPENDED, NOT DISMISSED. THE PEOPLE IN CHARGE OF THE GRIEVANCE- LESHAWN HENRY (NOT A DEFENDANT) DEFENDANT DAN WILSON AND THE OTHER MEMBERS OF THE GRIEVANCE AND ABITRATION COMMITTEES , SAID THAT YOUR CASE IS CLOSED AND TERMINATED. AND THEY CANNOT HELP YOU IN ANY WAY".

From his  uncontroverted admission, Herrera made it clear that defendant Peter St. John EVP of property management, apparently together with defendants from Securitas  and the union,  all  made the  collective decision to suspend plaintiff, help Dzaferovic get his job back, despite the fact that plaintiff  did nothing wrong and was in fact the victim of harassment  and  racially-charged statements  made by Dzaferovic.  It was clear that Trinity through defendants were highly-influential as the client, who had the power to control the employees of Securitas and FQM insofar as their salaries, work hours, and even promotion is concerned. It was the clients who had to be followed by contractors on many occasions, sometimes even superseding the contractor's directives if there was a conflict with the wishes of the client, since the clients could threaten contractors like Securitas and FQM with cancellation of their contracts of services.

Valcarcel v. First Quality Maintenance, 2013NY Slip Op 51793 (U) decided on October 15, 2013 Supreme Court, Queens County, New York, is a case in point involving a First Quality Maintenance employee, Prince Valcarcel. He also sued Trinity Real Estate, and the same herein defendants Christian Gonzales and Peter St. John. The Court held in *Valcarce*l that the language of New York State Human Rights Law (NYSHRL) (Executive Law s. 296[1][a] provides that " it shall be unlawful discriminatory practice (a). For an employer or licensing agency, because of an individual's race, creed, color, national origin to refuse or hire or bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." Personal liability may be imposed upon individual defendants under Executive Law s. 296 (6) which makes it " an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

While there is no claim for individual liability under Title VII, " defendants may be held individually liable under the [NYSHRL]." Ramirez v. Hempstead Union Free School Dist. Bd of Educ., 2014 WL 3547374* 6(E.D.N.Y. 2014) (citing Feingold v. New York, 366 F.3d 138, 157 (2d Cir. 2004) and Tomka v. Seiler Corp., 66 F.3d 1295 1317 (2d Cir. 1995).

According to the Second Circuit in *Feingold*, a supervisor is an "employer" and liable under the NYSHRL if that supervisor "actually participates in the conduct giving rise to the discrimination." Feingold, 366 F.3d at 157 (citing Tomka, 66 F. 3d at 1317." In addition, a non-supervisor, or co-worker, may be liable for discrimination, even if they lack the authority to hire or fire plaintiff, if that person "aids, abets, incites, compels or coerces the doing of any of the acts forbidden under this article, or attempt to do so. " Id. At 158 (citing N.Y. Exec.

8

Law s. 296 (6). This language has been defined to extend liability to **ANY DEFENDANT** who " actually participates in the conduct giving rise to the discrimination claim." Id.

To state a claim for retaliation under NYSHRL s. 296 (7), a plaintiff must establish that he has engaged in protected activity, his employer was aware that he participated in such activity, he suffered an adverse employment action based upon that activity, and there is a causal connection between the protected activity and the adverse action."  Forrest v. Jewish Guild for the blind, 3 N.Y. 3d 295, 312,786 N.Y.S. 2d 382 (2004).

Other courts have found that a failure to investigate can constitute " active participation" to support an aiding and abetting claim. See Feingold. A person can be held liable under s. 296 claims where defendants took no action to remedy such behavior of which they were aware. Gallo v. Wonderly, Inc. 2014 WL36628 *8 (N.D.N.Y. 2014).  Case law establishes beyond cavil that a supervisor's failure to take adequate measures can rise to the level of active participation under HRL s. 296 (6) accord. Sid v. ASA Insitute of Business and Comp. Tech. Inc., 2013 WL 1193056 *6 (E.D.N.Y. 2013).

Here, there is no doubt that defendants Christian Gonzales and Peter St. John aided  and abetted the discrimination and retaliation done against plaintiff. It is believed  that defendant Gonzales, together with defendants from Securitas William Dunn, James Griffin, Frank Anello and Gloria Ran were directly responsible for  the reduction of  plaintiff's hours and intentionally failed to restore them, after plaintiff had complained to Securitas and the defendant Union 32 BJ that his hours were being shaved, he was denied overtime, his hours were being given to younger blacks, whites  and Hispanics, both male and female, and that

9

plaintiff was bypassed for promotion, and most importantly retaliated against and subjected to adverse employment action. These events also caused plaintiff to miss his FSD FDNY third test which expired on August 21, 2014, when he was put back to work only on August 22, 2014. His FSD license was unduly cancelled by the FDNY due to expiration.

For his part, defendant Peter St. John, as EVP of Trinity, knew or should have known that plaintiff's locker was cut at 200 Hudson and he was being racially-harassed by defendant Dzaferovic. This cannot be denied by defendant St. John since all the building property managers report to him and he knew and was expected to know what was happening at his building over at 200 and 350 Hudson. Plaintiff believes that St. John received a copy of Dzaferovic' report but unjustly ordered plaintiff "off the site " and suspended for more than four (4) months. Through negligence intentional or otherwise, he failed to investigate plaintiffs complaints of harassment and retaliation, even if plaintiff submitted reports and made complaints to his superiors several times. Worse, Mr. St. John admitted Dzaferovic back to work at 350 Hudson after Dzaferovic, despite prior misconduct, was fired for harassment.

Plaintiff has submitted to the court in his objections to Report and Recommendation two (2) CDs of taped conversations with defendant William Dunn who has admitted the reduction of plaintiff's hours and lied about an investigation being made on plaintiff's discrimination complaint when there was actually none. Likewise, plaintiff submits another CD of a conversation plaintiff had with non-defendant FSD Securitas employee Nicolas Steiner of 350 Hudson, who has also admitted that Dzaferovic submitted a believed to be falsified "report" presumably blaming plaintiff on the events at 350 Hudson on April 5, 2014 which led to plaintiff's suspension.

Note that the defendants Gonzales and St. John were also sued by Valcarcel for harassment, retaliation and racial slurs and comments. Plaintiff appears to be another victim of defendants in the same building at 200 Hudson St.

Plaintiff likewise urges the court to take judicial notice of news reports from the BLACK STAR NEWS chronicling the alleged unfair and unjust treatment of employees of color, like plaintiff, at the hands of Mr. Gonzales and St. John, not only under Trinity, but FQM as well. Attached is a copy of one of the news reports of BLACK STAR NEWS regarding this.

Plaintiff submits that this case is replete with numerous details which cannot just be disregarded and ignored. The intricacies of these factual events could only be legally analyzed and its consequences determined only if this case were allowed to proceed to a jury trial. It would be a great injustice if plaintiff was denied his day in court and defendants made a mockery of the various laws prohibiting discrimination and retaliation, and render nugatory labor laws and pertinent federal, state and city laws on civil and human rights.

WHEREFORE, it is respectfully prayed that the motion to dismiss filed by defendants Christian Gonzales and Peter St. John be DENIED. Other reliefs and remedies just and equitable under the premises are likewise prayed for.

*Ramon Modesto*

Dated : December 14, 2015
      Woodside, NY 11377

Ramon Modesto

4029  67 St.  2F

Woodside, NY 11377

Cel. 718-431-5226.

11

<u>A F F I D A V I T</u>

I, Ramon Modesto, declare under penalty of perjury alleges that :

1.  Plaintiff files this affidavit in support of his memorandum in opposition to the motion to dismiss filed by defendants Christian Gonzales and Peter St. John of Trinity Real Estate ("Trinty"). Plaintiff incorporates by reference his complaint, I am a licensed security guard formerly assigned at the Securitas site at Trinity Real Estate (Trinity) a portfolio of thirteen buildings located in Manhattan with its main office at 75 Varick St.,. I started work thereat in June, 2013.

2.  Plaintiff seeks to and urges the Honorable Court to Deny the motions to dismiss filed by defendants Christian Gonzales and Peter St. John.

3.  Sometime in July, 2013, I became a regular employee with 40 hours of work per week or more if there was overtime. In the same month, Securitas began to shave my hours. Securitas never advanced a reason for doing so.

4.  I complained to my superiors about this-first to non-defendants Debbie Fernandez and Supervisor Alfred Soto. I also complained to our union 32 BJ

1

through defendants Henry Fair ("Fair"), Union Steward and defendant Israel Melendez ("Melendez"), Union delegate in charge of Security guards. All to no avail and I never got my hours back.

5.  My hours were given to defendant Brenda Johnson. My hours were greatly reduced from 40 down to 36 then 32 and at some point to 29 hours per week. My regular post was given to other younger male and female guards either black or Hispanic. I was denied overtime and promotion. In a certain post open for candidates at 75 Varick St., Securitas bypassed me and chose a security officer named Mr. Shakill who had inferior qualifications than I. To my knowledge, I am the only Asian and Filipino working at that site.

6. I was forced to find a 2nd job because of my badly decimated hours of work.

7. Sometime in October11, 2013, defendant Brenda Johnson cursed and uttered profanities against me at 200 Hudson loading dock. I complained to defendants Frank Anello ("Anello") and William Dunn ("Dunn") about this. I also complain to the Securitas Hotline. (Pls. see hotline reports filed with Securitas). But no investigation was ever made on my complaints and

2

my complaints were ignored. Johnson screamed at me because of the " bike incident" at 200 Hudson loading dock.

8. The day before on October 10, 2013, defendants Deetendra Harisaran, ("Harisaran")  Mark Kelly ("Kelly") and Keith Cummings(" Cummings") cut my locker. Pls. see attached pictures. These defendants spread my books and other personal belongings on the locker floor and bench. Defendant Anello later admitted to me that defendant Christian Gonzales ("Gonzales") authorized the cutting of my locker per Gonzales' email to Anello on October 10, 2013.

9. I complain to Anello,  Tony Waterman ("Waterman") of FQM but I never got my locker back at 200 Hudson. No action was taken against the FQM employees who unjustly harassed me and cut my locker.

10. The loss of that locker hurt me professionally and career-wise. My preparation and review for my FSD test was derailed and set back. I was driven away from 200 Hudson.  I was set up for more harassment discrimination and retaliation at 350 Hudson where I hoped to continue my FSD review.

3

11. Defendant Jusuf Dzaferovic (Dzaferovic) racially slurred me and uttered profanities against me at 350 Hudson. He did this to me four times on October 16, 23, 30, 2013 and April 5, 2014. That day April 5, I suffer chest pains and I had to seek medical attention on my physical and emotional conditions. I also call the hotline for Securitas, report Dzaferovic and ask for a transfer to another workplace.

12. I bring this matter (racial epithets hurled by Dzaferovic) to the attention of Securitas non-defendants FSD Sofia brooks and FSD Carlos of 350 Hudson.

13. On October 30, 2013, I immediately call the attention of FQM defendant Robert Savage, VP for HR, through his assistant  Raymond, a Taiwanese national.

14. Days later, I  talk over the phone to Mr. Savage. My friend  Mr. Edgar Recto also call  Mr. Savage.  Mr. Savage never investigates the incidents. I also complain to FQM supervisor Tony Waterman ('Waterman"), who does not investigate the abuses committed by his employee Dzaferovic and ignores my complaint.

4

15. I bring the racial slurring incidents to Securitas defendants William Dunn, James Griffin, Frank Anello and Eddie Maldonado. No investigation was ever conducted. Pls. see affidavit v. Securitas dated December 2, 2015 attached to the objection to Report and recommendation. Defendant Eddie Maldonado on November 1, 2013 asks me to make a handwritten report on the Dzaferovic incident at 350 Hudson in October, 2013 which I submit and which was received by Mr. Griffin.

16. Securitas defendant Dunn lied when he was heard to have said he reached out to Savage of FQM and the matter with Dzaferovic was investigated.

17. I believe that I was caught in a mire of office politics when in July, 2013, I entertained the complaint of non-defendants FQM employees Katherine Cepeda and Engr. Melvin Munoz. Melvin Munoz together with non-defendant FQM Engr. Prince Valcarcel sued FQM and Trinity for discrimination and employment issues. FQM fired Valcarcel. Munoz was targeted for termination by FQM and Trinity for suing these two employers. Defendants of Trinity who were also sued by Valcarcel and Munoz in the *Valcarcel* case were Trinity employees Christian Gonzales ("Gonzales") and Peter St. John " ( St. John")   BOTH OF WHOM ARE ALSO

5

DEFENDANTS SUED BY THE PLAINTIFF IN THIS CASE. THESE TWO DEFENDANTS HAVE BEEN SERVED WITH A COPY OF THE SUMMONS AND COMPLAINT BELATEDLY ONLY ON OCTOBER 22, 2015 AT THEIR OFFICES AT 75 VARICK ST. This is the same site 200 HUDSON AND 75 VARICK where the factual incidents of *Valcarcel* took place, as in the case of plaintiff in this case. At the time I entertained the complaint of Cepeda and Munoz in July 2013, the Valcarcel case was still pending decision. Valcarcel was decided by the Supreme Court of Queens County, New York in October, 2013.

18. I believe that I suddenly became likewise a target for removal from the site for " sympathizing " with Munoz and company and for supporting statements made by Cepeda and Munoz. Cepeda and Munoz complained about the use and exchange of dangerous drugs and illegal substances in the buildings within the Trinity portfolio. Both of them accused FQM defendant Frank / Tony Waterman ("Waterman") and Trinity , and likewise Securitas, of allowing the proliferation of drug use by FQM employees and turned a blind eye on numerous complaints. Specifically, Munoz and Cepeda identified the drug users and distributors as " Charlie" and " Deon " (non-defendants) of FQM working at 75 Varick St. Defendant Gonzales is the

property manager of 200 Hudson and 75 Varick including a third building for the Trinity site.

19. Unaware of what was going on since I was barely 1 month in the Trinity site, It was immediately after I spoke to Melvin Munoz and Katherine Cepeda that I did not know that I was caught in the middle of a case involving acts of harassment, discrimination and retaliation committed by defendants FQM, Trinity management and Trinity employees Christian Gonzales and Peter St. John.


20. This fact of Securitas and FQM employees and now Trinity Real Estate working together to remove me from the site was admitted by defendant Israel Melendez ("Melendez"). He categorically stated, when Plaintiff asked him if he was targeted by a conspiracy where FQM and Securitas working together to oust certain employees they did not like, Melendez said – " OF COURSE THEY'RE CONSPIRING AGAINST YOU. WE TRAINED THEM, TO GO AND MOVE AGAINST CERTAIN PEOPLE ". Plaintiff was at that time in the office of 32 BJ where Melendez works when plaintiff filed one of his several grievances.

21.  From the events which transpired, it is clear that defendants Gonzales and St. John harassed, discriminated and retaliated against plaintiff. They also aided and abetted the acts done against plaintiff in violation of federal, state and city laws against discrimination, retaliation and violation of civil and human rights.

22. Defendants Christian Gonzales and Peter St. John were known as harassers of workers trying to make a decent living, as they did in the case of FQM employee Prince Valcarcel and now plaintiff.

23. Here in the case of plaintiff, Christian Gonzales and Mr. St. John had prominent roles in engaging in unlawful acts designed to retaliate against plaintiff and make him quit his job.

24. Plaintiff  believes that Gonzales was the principal author who ordered the clipping of plaintiff's locker. This fact was admitted by defendant Mark Kelly ("Kelly") to plaintiff. Defendant Anello also confessed to plaintiff that Gonzales ordered the cutting of plaintiff's locker per the latter's email to Anello on October 10, 2013.

8

25. Defendant St. John was also responsible for taking in Dzaferovic back for employment despite the fact that Dzaferovic harassed employees in 350 Hudson and was actually fired and terminated until the union helped Dzaferovic return to his old post but allowed plaintiff to be suspended and ignored plaintiff's pleas for assistance. Mr. St. John as EVP for property management knew or should have known that serious violations of law were occurring in his buildings. He chose Dzaferovic to remain and is believed to have ordered the illegal suspension of plaintiff without any memo or written order whatsoever. Both St. John and Dzaferovic are white.

26. Respectfully submitted to the Honorable Court, seeking a reversal of the aforesaid Report and Recommendation and praying that the motion to dismiss filed by defendant FQM employees be denied. Plaintiff likewise prays for other reliefs and remedies just and equitable under the law.

Ramon Modesto
Ramon Modesto

Dated: December 14, 2015 Woodside, New York 11377.

Subscribed before me this ___14th___ day of December, 2015.

NOTARY PUBLIC

FARHEEN LODHI
Notary Public - State of New York
NO. 01LO6143890
Qualified in Queens County
My Commission Expires Apr 17, 2018

9



RAMON MODESTO
4029 67 ST. 2F
WOODSIDE, NY 11377

USM PS
SDNY

RETURN RECEIPT
REQUESTED

7014 2120 0002 7194 4293

CERTIFIED MAIL

PRO SE INTAKE UNIT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
...IEL PATRICK MOYNIHAN UNITED STATE...
500 PEARL STREET
NEW YORK, NY 10007